# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CR-98-TLS |
| | ) | |
| JOHN EDWARD SCOTT | ) | |

## OPINION AND ORDER

Police obtained a warrant to search a residence at a particular address on Heritage Drive in Fort Wayne, Indiana. During the search, the police found incriminating evidence, and after the search, the Defendant apparently made statements to police. The Defendant has filed a Motion to Suppress [ECF No. 33], seeking the suppression of evidence obtained during the search and any statements he made after his arrest. For the reasons set forth in this Opinion and Order, the Court is unpersuaded by the Defendant's arguments and denies his Motion to Suppress.

## PROCEDURAL BACKGROUND

The Defendant is charged in a four-count Indictment with two drug offenses (possessing with intent to distribute cocaine, and managing and controlling a building for the purpose of storing, distributing, and using cocaine, heroin, and marijuana) and two firearm offenses (possessing a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm). On September 17, 2010, the Defendant filed a Motion to Suppress [ECF No. 33]. In this Motion, the Defendant seeks the suppression of evidence obtained during the search and any statements he made after his arrest. The Motion challenges the Search Warrant Affidavit, arguing that it is based upon speculation and uncorroborated hearsay, that it lacks a sufficient basis upon which a finding of probable cause can be made, that it is facially invalid because it is

not made upon oath or penalties of perjury, and that no jurat is contained in the Affidavit. In addition to the claim that his Fourth Amendment rights were violated, the Defendant claims that the police violated his Fifth and Sixth Amendment rights, and he requests a hearing. On October 4, the Government filed a Response [ECF No. 36], arguing that the Affidavit furnished probable cause, that the issuing judge signed the Affidavit with the jurat showing it to be subscribed and sworn to the issuing judge, and that a hearing is not necessary. Along with its Response, the Government submitted the Search Warrant Affidavit [ECF No. 36-1 at 1–3] and the Search Warrant [ECF No. 36-1 at 4].

On October 6, the Court conducted a telephonic status conference with counsel to clarify the arguments being presented by the Defendant and to consider the necessity of a hearing. At this conference, counsel for the Defendant indicated that, in addition to the Fourth Amendment issues related to the alleged defects of the Affidavit, the Defendant was considering challenges on other grounds including: the August 19 exchange/conversation between the suspect and an individual at the Heritage Drive residence; the suspect's alleged driving of the car and his making of a social call; the observation of the suspect entering and exiting the residence; and the police interview of the suspect and the advisement of rights. On October 6, the Court issued an Order [ECF No. 39] directing the Defendant to file a brief in support of his Motion on or before October 29, the Government to file a response on or before November 12, and the Defendant to file a reply on or before November 19. In its Order, the Court directed the Defendant to address all of the grounds he intends to include with his Motion to Suppress and the necessity of an evidentiary hearing on the various issues.

On October 29, the Defendant filed a Memorandum in Support [ECF No. 40] of his

Motion. Attached to the Defendant's Memorandum in Support is the Search Warrant Affidavit [ECF No. 40-1] and the Search Warrant [ECF No. 40-2]. In his Memorandum in Support, the Defendant argues that the Affidavit is insufficient as a matter of law because it does not show that the Affiant was under oath, that the Affiant was testifying to the truth of the matters contained therein, or that the Affiant had personal knowledge of the contents of the Affidavit. On November 12, the Government filed a Response Brief [ECF No. 41]. On November 24, after having obtained additional time, the Defendant filed a Reply Brief [ECF No. 44] in which the Defendant argues that the Affidavit and the Search Warrant violated the Fourth Amendment because they were not based upon an oath or an affirmation. The Defendant's Memorandum in Support and Reply Brief do not present any Fifth or Sixth Amendment issues or the other miscellaneous issues raised at the October 6 telephonic status conference.

On December 1, the Court conducted a telephonic status conference with counsel to confirm that the Defendant was not proceeding with one of his initial arguments that the Affidavit did not state sufficient facts to support a finding of probable cause, with his claim that his Fifth and Sixth Amendment rights were violated, or with any of the miscellaneous issues mentioned during the October 6 telephonic status conference. Counsel for the Defendant indicated that, for purposes of the pending Motion to Suppress, the issues on which the Defendant is proceeding are those that were addressed in his Memorandum in Support and his Reply Brief involving the alleged deficiencies of the Affidavit under the Fourth Amendment.[1]

---

[1] The Defendant's Motion to Suppress argued that the Affidavit did not state sufficient facts to show probable cause and that the Affidavit was based upon speculation and uncorroborated hearsay. If the Defendant had proceeded with these arguments, he would have carried a heavy burden. The "central teaching of [Supreme Court] decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully,

The Court also confirmed with counsel that no evidentiary hearing was necessary to resolve the issues raised in the Defendant's Motion to Suppress.[2]

---

reduced to a neat set of legal rules." *Id.* at 232. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). For this reason,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238. "In issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997). For example, in issuing a warrant, a judge may infer that evidence of drug dealing is likely to be found where a dealer lives. *Id.* "[W]hen observing activity of a person suspected of criminal activity, Government agents are entitled to reasonably rely upon their special knowledge and expertise to assess probabilities and draw inferences," *United States v. Marin*, 761 F.2d 426, 432 (7th Cir. 1985), and a judge may take into account the experience and special knowledge of officers if the search warrant affidavit explains the significance of specific types of information, *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991). "Generally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (finding that a controlled buy was adequate to support probable cause where the confidential informant entered the building without contraband, exited moments later, and produced cocaine). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238–39 (quotation marks, brackets, and ellipsis omitted). The Defendant through counsel has advised that he is no longer making these arguments.

[2] In his Motion, the Defendant initially requested an evidentiary hearing. The Motion asserts that the Affidavit does not show that the Affiant was testifying to the truth of the matters contained therein. The Court does not understand the Defendant to be challenging the veracity of the Affidavit. He does not contend that the Affidavit of Detective Cain was intentionally false or recklessly false, that Detective Cain intentionally or recklessly omitted material information, or that any false statement or omission was necessary to support a finding of probable cause. Additionally, the Defendant has offered no proof that any portion of the Affidavit is false. Under *Franks v. Delaware*, there is a presumption of validity with respect to an affidavit supporting a search warrant. *Id.*, 438 U.S. 154, 171 (1978). A defendant challenging the veracity of an affidavit is entitled to an evidentiary hearing if (1) he can make a substantial preliminary showing that the affidavit supporting the warrant application was intentionally or recklessly false, or that the affiant intentionally or recklessly omitted material information, and (2) the false statement or omission "is necessary to the finding of probable cause." *Id.* at 155–56; *United States v. Robinson*, 546 F.3d 884, 887–88 (7th Cir. 2008); *United States v. Hoffman*, 519 F.3d 672, 675 (7th Cir. 2008). "A defendant faces a difficult burden in establishing these elements. His allegations must be more than conclusory, supported by more than a mere desire to cross-examine, and accompanied by a specific offer of proof." *United States v. Marshall*, 259 Fed. Appx. 855, 858 (7th Cir. 2008) (citing *Franks*, 438 U.S. at 171). The Defendant has not met his burden of showing that he is entitled to a *Franks* hearing, and he has now acknowledged that an evidentiary hearing is not necessary for his Fourth Amendment claims.

**FACTUAL BACKGROUND**[3]

On August 26, 2009, Allen County Police Department (ACPD) Detective Jack Cain, Deputy Prosecuting Attorney Jeffrey A. Stineburg, and Allen Superior Court Judge Kenneth R. Scheibenberger signed the Search Warrant Affidavit at issue in this case. The Affidavit has a typical affidavit caption that identifies the State of Indiana and the County of Allen, indicates the relationship of the Affidavit to a particular investigation (09V-42), and styles the document "Search Warrant Affidavit." The Affidavit then includes six paragraphs of facts and a seventh paragraph requesting a search warrant. Detective Cain's signature appears after these seven paragraphs, toward the end of the Affidavit. Directly under Detective Cain's signature is his printed name and an identification of him as the Affiant. His signature and printed name appear at the bottom of the second page, but immediately above the jurat, which appears at the top of the third page. The jurat states, "Subscribed and sworn to me this 26th day of August, 2009" (Aff. 3), and includes the signatures of Attorney Stineburg and Judge Scheibenberger; the printed name, bar number, business address, and business telephone number of Attorney Stineburg; and the identification of Judge Scheibenberger as a Judge of the Allen Superior Court.

The first paragraph of the Affidavit states:

> Detective Jack Cain of the Allen County Police Department swears that he believes and has Probable Cause to believe that certain evidence of drug activity including Heroin and derivatives thereof, controlled substances, United States Currency, firearms and/or weapons, records of drug transactions and/or financial information, which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances, are concealed on or about the following

---

[3] The facts are not at issue in this proceeding. The Government included virtually identical "factual background" sections in its Response and its Response Brief. In his Memorandum in Support, the Defendant stated that, for purposes of his Motion to Suppress only, he did not disagree with the factual background in the Government's Response, and in his Reply Brief, the Defendant indicated that the factual background in this case is not at issue.

property, to wit: [providing a detailed description of the Heritage Drive residence including a physical description of the building and the street address].

(Aff. 1.) The first sentence of the second paragraph of the Affidavit states: "In support of your affiant's assertion of Probable Cause, the following facts are within your affiant's personal knowledge, to wit." (Aff. 1.)

In the remainder of the second paragraph, Detective Cain described the procedures police utilize in controlled drug buys with confidential informants (CIs). In controlled buys, CIs are searched thoroughly prior to buys in order to ensure that CIs are not holding or hiding any contraband. The CIs are then outfitted with audio recording devices, and constant surveillance of the CIs is maintained as the CIs travel to meeting locations and until the CIs complete the transactions and meet detectives after the deals. After the CIs hand over the drugs purchased, the CIs are again searched in order to ensure that no contraband items are present. If transactions occur inside residences, law enforcement officers maintain surveillance as the CIs enter and exit the residences, keeping all entrances and exits under surveillance while the CIs are inside.

The third paragraph indicates that police utilized a particular confidential informant (CI) in this investigation. The Affidavit states that this CI had proven credible and reliable, that this CI had provided information and/or assisted law enforcement in the past that had resulted in the seizure of illegal narcotics, and that police had been able to corroborate information provided by this CI.

According to the fourth paragraph, on August 19 and August 24, 2009, police utilized this CI to perform two controlled buys of heroin. Police used the controlled-buy procedures outlined above. None of the pre-buy and post-buy searches of the CI produced any contraband. After each transaction, Detective Cain field tested the items purchased by the CI, and those items

field tested positive for heroin, with approximate weights of 1.7 grams and 1.74 grams for the respective buys.

In the fifth paragraph, the Affidavit provides details about the controlled buys. With each buy, the CI met with a suspect at a Bluffton Road address, and they traveled to a nearby gas station. While the CI waited at the gas station, the suspect drove the CI's vehicle to where he purchased the heroin. On both occasions, this suspect drove to a particular address on Heritage Drive, Fort Wayne, Indiana, and obtained the heroin. The suspect then returned to the gas station, and the suspect and the CI returned to the Bluffton Road address. Detectives maintained surveillance on this suspect and the CI during these events, and surveillance detectives observed the suspect arrive and leave the driveway of the residence on Heritage Drive. During the controlled buy on August 19, a detective observed an individual exit the Heritage Drive residence and approach the driver's side of the vehicle that the suspect was driving. A covert recording device captured a conversation between the individual who had exited the residence and the suspect that concerned the exchange of buy money for the heroin. On August 24, surveillance detectives observed the suspect arrive at the Heritage Drive residence, park in the driveway, and enter the residence. The suspect later exited the residence and departed for the gas station.

Paragraph six summarizes Detective Cain's experience. He had been a police officer for more than fourteen years, had received training in the methods of drug traffickers, and had participated in over 1000 drug investigations. Based upon the facts of this case and his training and experience, Detective Cain stated his belief that the illegal trafficking occurring at the Heritage Drive residence was a continuing enterprise, that narcotics traffickers commonly

possess firearms, that drug traffickers typically keep track of the money associated with trafficking activities by using written and computer records, and that narcotics traffickers limit the number of individuals whom they allow to come to their residences to purchase narcotics in an attempt to remain undetected by law enforcement. In paragraph seven, Detective Cain requested that the state court issue a warrant to search the Heritage Drive residence.

On August 26, 2009, Judge Scheibenberger signed and issued the Search Warrant. The Search Warrant begins by stating: "WHEREAS an Affidavit has been filed with me (and/or sworn testimony has been heard by me) that established Probable Cause." (Search Warrant 1.) The Search Warrant authorized a search of the Heritage Drive address for evidence of drug activity and seizure of property found during the search.

**DISCUSSION**

The Court must determine whether the Search Warrant Affidavit was invalid. The Defendant claims that it was not made upon oath or under penalties of perjury, did not show that Detective Cain was testifying to the truth of the matters contained therein or that he had personal knowledge of the contents of the Affidavit, and lacked a jurat. He contends that the Fourth Amendment mandates that a warrant be made pursuant to an oath or affirmation, that swearing is not enough to meet the floor requirements of the Fourth Amendment, that the Affidavit is deficient, that the Search Warrant was not properly supported, and consequently that all of the evidence obtained pursuant to the warrant should be suppressed.

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

shall issue, but upon probable cause, supported by Oath or affirmation, and
particularly describing the place to be searched, and the persons or things to be
seized.

U.S. Const. amend. IV. The Supreme Court has explained that "the Fourth Amendment has interposed a magistrate between the citizen and the police," and this "was done so that an objective mind might weigh the need to invade [an individual's] privacy in order to enforce the law." *McDonald v. United States*, 335 U.S. 451, 455 (1948); *see also Johnson v. United States*, 333 U.S. 10, 14 (1948) (recognizing the protection that is afforded by the Fourth Amendment requirement that interposes "a neutral and detached magistrate" to draw reasonable inferences from the facts instead of the police). In applying the oath or affirmation requirement, the Seventh Circuit has instructed that courts must "keep in mind the words of the Supreme Court in *Illinois v. Gates*, 462 U.S. 213[, 236] (1983), that 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.'" *United States v. Wilson*, 169 F.3d 418, 423 (7th Cir. 1999).

In support of his Motion, the Defendant makes technical arguments based upon differences among the definition of terms such as oath, affirmation, and sworn or swear. The Defendant relies upon definitions from *Black's Law Dictionary* in his effort to distinguish among them and undercut the Affidavit. *Black's Law Dictionary* defines "oath" as follows:

> 1. A solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound to a promise. • The person making the oath implicitly invites punishment if the statement is untrue or the promise is broken. The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false. . . . 2. A statement or promise made by such a declaration. 3. A form of words used for such a declaration. 4. A formal declaration made solemn without a swearing to God or a revered person or thing.

*Black's Law Dictionary* (9th ed. 2009). It defines "affirmation" as follows:

9

> A solemn pledge equivalent to an oath but without reference to a supreme being or to swearing; a solemn declaration made under penalty of perjury, but without an oath. Fed. R. Evid. 603; Fed. R. Civ. P. 43(b). While an oath is "sworn to," an affirmation is merely "affirmed," but either type of pledge may subject the person making it to the penalties for perjury.

*Id.* The term "swear" means to "administer an oath to (a person)" or to "take an oath." *Id.* An "affidavit" is a "voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths."[4] *Id. Black's Law Dictionary* defines "jurat" as follows:

> 1. . . . A certification added to an affidavit or deposition stating when and before what authority the affidavit or deposition was made. • A jurat typically says "Subscribed and sworn to before me this ____ day of [month], [year]," and the officer (usu. a notary public) thereby certifies three things: (1) that the person signing the document did so in the officer's presence, (2) that the signer appeared before the officer on the date indicated, and (3) that the officer administered an oath or affirmation to the signer, who swore to or affirmed the contents of the document.

*Id.*

The Eight Circuit has provided the following discussion of an oath or affirmation:

> "An 'Oath or affirmation' is a formal assertion of, or attestation to, the truth of what has been, or is to be, said." *United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977). According to Black's Law Dictionary (7th ed. 1999), an "oath" is defined as a "solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true," *id.* at 1099, while an "affirmation" is a "pledge equivalent to an oath but without reference to a supreme being or to 'swearing,'" and "either type of pledge may subject the person making it to the penalties for perjury," *id.* at 59.

---

[4] The Seventh Circuit has approvingly quoted a similar definition of "affidavit" from an earlier edition of the dictionary. *Granada v. United States*, 51 F.3d 82, 84 (7th Cir. 1995) ("'[a] written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation'") (quoting *Black's Law Dictionary* 58 (6th ed. 1990)). The Seventh Circuit has also stated that an "affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (quotation marks and citations omitted).

*United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002). That court added:

> An oath or affirmation "is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed."

*Id.* at 1105–06 (quoting *Turner*, 558 F.2d at 50). "[A] person who manifests an intention to be under oath is in fact under oath." *Id.* at 1105. The Seventh Circuit has instructed:

> Following the clearly recognized rule that "the absence of the formal requirements of a jurat in a sworn affidavit does not invalidate the statements or render them inadmissible if they were actually sworn to before an officer authorized to administer an oath," we conclude that so long as the documents comply with 28 U.S.C. § 1746,[5] and in the interests of justice, a district court should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied.

*Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (quoting *Peters v. United States*, 408 F.2d 719, 722 (Fed. Cl. 1969)).

The Defendant is correct that the Affidavit in this case does not explicitly reference God in a formal oath, expressly mention penalties of perjury, or directly state that Detective Cain believed the stated facts to be true. However, the Court finds that the Search Warrant Affidavit at issue in case was valid, that it was not deficient, and that it satisfied Fourth Amendment requirements. To invalidate the Search Warrant in this case on the grounds presented by the Defendant would require the Court to interpret the Affidavit in the sort of hyper-technical manner that the Supreme Court and the Seventh Circuit have instructed courts not to apply.

In this case, the statement of Detective Cain was drafted and submitted in the form of a

---

[5] This federal statute addresses unsworn declarations subscribed under penalty of perjury. 28 U.S.C. § 1746.

written and verified Affidavit. *Cf. United States v. Wilson*, 169 F.3d 418, 424 (7th Cir. 1999) (stating that "the preferred practice counsels that the issuing judge require that the informants' statements be reduced to writing and verified"). After the formal caption, the Affidavit began by stating that Detective Cain "swears" that he has probable cause to believe that evidence of illegal drug activity is concealed at a particular residence. *See Brooks*, 285 F.3d at 1105 (finding that "the language that [the officer] used in the documents, especially the repeated recitations that he was 'duly sworn,' quite obviously reflects his intention to be under oath"). The Affidavit describes that residence in detail and identifies it by street number. At the beginning of the second paragraph, Detective Cain attested that the facts set forth in the paragraphs that followed in the Affidavit were within his personal knowledge, which, when coupled with his swearing to the statements, implies that he believed those facts to be true. In the following five paragraphs, Detective Cain stated the procedures followed in controlled buys generally, provided details regarding the CI (including facts supporting the CI's credibility and reliability), spelled out detailed facts related to the controlled buys on August 19 and August 24 (including factual details related to the procedures followed with the controlled buys), and summarized Detective Cain's training and experience and his beliefs about illegal drug activity at the Heritage Drive residence based upon the facts of the investigation. The Affidavit concluded with Detective Cain's request for a search warrant and his signature, which was accompanied by his printed name and an identification of the detective as affiant. On the top of the third page, but immediately after the detective's signature block, is the jurat and the signatures of Deputy Prosecuting Attorney and Allen Superior Court Judge Scheibenberger.[6] In the jurat, the deputy

---

[6] Under Indiana law, a deputy prosecuting attorney is authorized to "administer all oaths that are convenient and necessary to be administered in the discharge of their official duties." Ind. Code § 33-39-2-5.

prosecuting attorney and the judge certified that Detective Cain had appeared before them on August 26, 2006, that Detective Cain had signed the Affidavit in front of them, and that an oath or affirmation was administered to Detective Cain.[7] This certification is then reiterated in the Search Warrant signed and issued by Judge Scheibenberger on the same date, which began with the following statement: "WHEREAS an Affidavit has been filed with me (and/or sworn testimony has been heard by me) that established Probable Cause." (Search Warrant 1.) On their face, the Affidavit and the Search Warrant are consistent with a police detective formally undertaking to tell the truth by signing a statement of facts under oath before a neutral magistrate as part of an application for a search warrant. Consequently, the Court finds that the Affidavit

---

[7] The Government argues that the Affidavit conforms to an Indiana statute that governs affidavits and search or arrest warrants. Indiana Code § 35-33-5 implements the search and seizure requirements of the Fourth Amendment and the nearly identical provision of the Indiana Constitution (Article I, § 11), and, at least as far as Indiana courts and Indiana law enforcement are concerned, "[a] warrant and its underlying affidavit must comply with the Fourth Amendment prohibition on unreasonable searches and seizures, as well as Indiana constitutional and statutory law." *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009) (stating the "constitutional principles [of the Fourth Amendment and Article I, § 11] are codified in Ind. Code § 35-33-5-2"). Indiana Code § 35-33-5-2(c) provides that a search warrant affidavit is sufficient when it is substantially in the following form:

    STATE OF INDIANA                         )
                                                     ) SS:
    COUNTY OF _____        )

    A B swears (or affirms, as the case may be) that he believes and has good cause to believe (here set forth the facts and information constituting the probable cause) that (here describe the things to be searched for and the offense in relation thereto) are concealed in or about the (here describe the house or place) of C D, situated in the county of _____, in said state.

    Subscribed and sworn to before me this \_\_\_\_\_ day of _____ 20\_\_.

The Government is, indeed, correct that the Affidavit at issue in this case substantially conforms to this statutory form. However, the Defendant is challenging the Affidavit and Search Warrant under the Fourth Amendment, and federal standards govern the application of the Fourth Amendment. *See Wilson*, 169 F.3d at 423 ("Although the states retain a great deal of flexibility in the manner in which they conform their law enforcement procedures to the standards of the Fourth Amendment, . . . federal standards apply to the interpretation of the Fourth Amendment."); *id.* at 423 n.4 ("The Supreme Court made if clear in *Ker* that '[t]he States are not . . . precluded from developing workable rules governing arrests, searches and seizures to meet "the practical demands of effective criminal investigation and law enforcement" in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures.'" (quoting *Ker v. California*, 374 U.S. 23, 34 (1963)).

13

satisfies the Fourth Amendment oath or affirmation requirement, and the Court will deny the Defendant's Motion to Suppress.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress [ECF No. 33] is DENIED.

SO ORDERED on December 6, 2010.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT